THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| MARK SAMUEL, §<br>  *Plaintiff* §<br> §<br> § **Civil Action No.: 25-2407**<br>**v.** §<br> §<br>**PHILLIPS 66 COMPANY,** §<br>  *Defendant*. § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Mark Samuel ("Samuel") , by and through his attorney of record, Daniel, Williams & Associates, PLLC, who files this complaint against Phillips 66 Company ("Phillips 66" or "Defendant"), and for causes of action would show unto this Honorable Court as follows:

### I.   PARTIES

1. Mark Samuel is an individual whose address is 21502 Briar Landing Lane, Houston, Texas 77450.

2. Defendant, Phillip 66 is a corporation authorized to do business in the State of Texas with a principal office at 2331 City West Blvd, Houston, Texas 77042. Defendant may be served through its registered agent: Corporation Service Company d/b/a CSC-Lawyers Inco at 211 E. 7th Street, Suite 620, Austin, TX 78701.

### II.   JURISDICTION AND VENUE

3. Jurisdiction is conferred on this Court over the subject matter of this litigation pursuant to 28 U.S.C. § 1331; 42 USCS § 2000, et seq., 42 U.S.C. Section 1981, a federal statue, pursuant to 28 U.S.C. 1337 because this action is based on a federal statue regulating

commerce, and pursuant to 28 U.S.C. 1343 because the action is based on deprivation of the Samuel's right under color of state law as against a federal law providing for equal rights.

4. Defendant is an "employer", and that term is defined by 42 USCS § 2000e-2 (a)(1).

5. At all times relevant to this action, Samuel was an "employee" as the term defined by 42 U.S.C. § 2000 e(b).

6. Venue is proper in the Houston Division of the Southern District of Texas as the events giving rise to the cause of action in the lawsuit occurred withing the Southern District of Texas and within the parameters of the Houston Division. Therefore, venue is appropriate in the judicial district under 28 U.S.C. § 1391(b) , 42 U.S.C. § 2000e-5(f)(3), and 42 U.S.C. § 1983.

7. Venue is proper for the Defendant pursuant to 28 U.S.C. §1391 because individual Defendants committed violations under the color of law, acts or omissions in the district of the United States District Court.

### III.   FACTUAL ALLEGATIONS

8. Mark Samuel (hereinafter "Mr. Samuel"), an African American man, who began his employment with Phillips 66 in May 2019 in the Procurement department at a pay grade level 14.

9. During his first two years of employment, Mr. Samuel consistently demonstrated outstanding performance and received glowing reviews from his then-General Manager, Crispin Glymph ("Glymph").

10. In 2021, based on his performance and desire for professional advancement, Mr. Samuel applied for new roles within Phillips 66. He was offered two internal positions.

11. Ms. Samuel was offered a position in Procurement at the same grade level 14. He was also offered another position - the Director of Business Insight role at grade level 15.

12. Mr. Samuel accepted the Director of Business Insight role based on the explicit understanding that the position included a corresponding pay increase.

13. The corresponding pay increase was not only stated in the job posting but also promised by the company.

14. Despite the job's designation as a grade 15 level, Mr. Samuel never received the promised salary increase. Instead, he remained underpaid relative to white employees with comparable or lesser roles for the next two years.

15. Mr. Samuel was the only African American employee in his department. His team consisted of seven individuals, including five white and one Asian employee. All of his direct supervisors during his tenure in the Director role were white.

16. Despite performing duties at a Director level and holding comparable responsibilities to his white and Asian colleagues, Mr. Samuel was the only member of his team compensated at grade level 14.

17. His white and Asian peers were compensated at grade level 15 or higher.

18. Mr. Samuel raised concerns on multiple occasions to his white supervisors regarding the pay disparity.

19. However, his complaints were repeatedly ignored, and no action was taken to correct the inequity.

20. Mr. Samuel was highly qualified for the position given that he holds an associate's degree in mechanical and electrical technology, a bachelor's degree in supply chain management, and a master's degree in business intelligence and data analytics.

21. Mr. Samuel also has over 23 years of professional experience, including 16 years in relevant corporate roles.

22. Mr. Samuel initially reported to Elise Herndon ("Herndon") in the Director role.

23. Herndon, a white manager, soon resigned, citing workplace harassment. After her resignation, Mr. Samuel's team experienced a rotating series of temporary supervisors.

24. At the time of his termination, Mr. Samuel was supervised by Tracey Eason ("Eason")

25. However, Linda Fritsch ("Fritsch"), a white woman and senior manager, maintained influence and authority over Eason's team and decisions despite not being Mr. Samuel's direct supervisor.

26. On or about October 26, 2023, during Mr. Samuel's end-of-year performance discussion, Eason confided in Mr. Samuel that Fritsch was actively seeking to ensure he received a poor performance rating.

27. Eason stated he had reported this to upper management, including Michael Andrew ("Andrew"), but no corrective action was taken.

28. On or about November 23, 2023, Mr. Samuel met with Eason to present a detailed summary of his 2023 accomplishments, including bullet points to aid Eason in defending Mr. Samuel's performance during calibration meetings.

29. Eason, however, declined to use the materials and demonstrated reluctance to oppose Fritsch's discriminatory actions.

30. On February 26, 2024, Eason called a meeting with Mr. Samuel and issued a Performance Improvement Plan ("PIP") citing four alleged performance issues.

31. Mr. Samuel disputed the validity of the PIP and was advised by Eason to raise his concerns with Human Resources.

32. On February 28, 2024, Mr. Samuel met with HR General Manager Brenda Brinson ("Brinson") to request that the PIP be rescinded. Brinson directed Mr. Samuel to meet with HR Business Partner Macey Cangolese ("Cangolese").

33. On March 6, 2024, Mr. Samuel met with Cangolese and Eason to explain why each of the PIP items was inaccurate, misleading, or unjustified.

34. During the meeting, Eason agreed to remove the item related to After-Hours Scheduling Support. Cangolese indicated she would review the matter and follow up. Mr. Samuel requested a follow-up meeting, which Cangolese declined.

35. On April 15, 2024, Mr. Samuel met again with Cangolese due to the lack of updates and reiterated his request for the PIP to be rescinded. Mr. Samuel also raised concerns about Fritsch's undue and inappropriate influence on his evaluation.

36. Once again, Cangolese declined to schedule a follow-up meeting or offer a resolution.

37. On May 15, 2024, Mr. Samuel met with Brinson to report continued inaction regarding his PIP and to restate his concerns regarding discrimination and retaliation.

38. Brinson acknowledged that Mr. Samuel had completed the PIP tasks and advised him to meet with Eason for final review. She also provided the contact information for HR Advisor Mary Reveles ("Reveles").

39. On May 20, 2024, Mr. Samuel contacted Reveles and scheduled a meeting to discuss his case. Reveles invited additional HR and legal staff including Micah Heilbrun, Ken Sellers, Danny Negrotto, and Taya Berry ("Berry").

40. However, approximately 15 minutes before the meeting, all invitees declined the meeting, and Reveles called Mr. Samuel to say she could not assist him. She redirected him to Cangolese or Berry.

41. On May 22, 2024, Mr. Samuel met with Berry and provided a comprehensive overview of the situation, including documentation previously submitted to HR. Berry assured Mr. Samuel that she would investigate and follow up with her findings.

42. Berry later asked Mr. Samuel to cancel his PIP completion meeting scheduled with Eason and instead meet with her to discuss her findings.

43. On May 29, 2024, Mr. Samuel arrived at the scheduled meeting expecting a resolution. Upon arrival, he was surprised to find Eason present, although he was not on the invitation.

44. During the meeting, Berry briefly dismissed Mr. Samuel's defenses without substantive explanation.

45. Immediately thereafter, Eason informed Mr. Samuel that he was being terminated, effective immediately.

46. Mr. Samuel's termination was the culmination of ongoing discrimination, unequal treatment, and retaliation in response to his protected activity, repeated complaints about unequal pay and discriminatory treatment on the basis of race.

47. Phillips 66's failure to correct the pay disparity, investigate credible claims of discrimination, and the abrupt and unjustified termination of Mr. Samuel, collectively establish a prima facie case of race discrimination and unlawful retaliation in violation of Title VII of the Civil Rights Act of 1964.

### IV.   CAUSES OF ACTION

*COUNT 1: RACE DISCRIMINATION IN VIOLATION OF
TITLE VII OF THE CIVIL RIGHTS ACT OF 1964*

48. Mr. Samuel incorporates the above-mentioned paragraphs as if fully set forth herein.

49. Mr. Samuel brings this claim pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1), which prohibits discrimination in employment on the basis of race.

50. To establish a prima facie case, Mr. Samuel must show: (1) he is a member of a protected class; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) similarly situated employees outside of his protected class were treated more favorably.

51. Mr. Samuel is African American and was the only African American employee on his seven-person team. He was qualified for the Director Business Insight role and had over two decades of relevant experience, including advanced academic credentials.

52. Despite his qualifications, Mr. Samuel was consistently underpaid relative to his white and Asian peers who held similar roles. He was denied the promised pay raise tied to his Director role and was ultimately terminated under pretextual grounds.

53. Meanwhile, his non-African American peers, who performed similar duties, received higher compensation and were not subject to the same scrutiny, adverse performance reviews, or termination.

54. The differential treatment Mr. Samuel experienced was based on race and constitutes unlawful discrimination

*COUNT 2: RETALIATION IN VIOLATION OF TITLE VII*
*TITLE VII OF THE CIVIL RIGHTS ACT OF 1964*

55. Mr. Samuel incorporates the above-mentioned paragraphs as if fully set forth herein.

56. 42 U.S.C. § 2000e-3(a), prohibits retaliation against employees who oppose discriminatory practices.

57. Mr. Samuel repeatedly complained to his supervisors and Human Resources about his unequal pay and the racially disparate treatment he was subjected to at Phillips 66.

58. These complaints constituted protected activity under Title VII.

59. Following these complaints, Mr. Samuel was subjected to a pattern of retaliation, including placement on a baseless Performance Improvement Plan (PIP), intentional delay and obstruction of Human Resource follow-up, and ultimate termination.

60. The temporal proximity between Mr. Samuel's protected activity and the adverse actions, combined with the lack of legitimate justification, demonstrates a clear causal link.

61. Phillips 66's actions constitute unlawful retaliation in violation of Title VII.

*COUNT 3: DISPARATE COMPENSATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e-2(a)(1)) and 42 U.S.C. § 1981*

62. Mr. Samuel incorporates the above-mentioned paragraphs as if fully set forth herein

63. Mr. Samuel, who is African American, performed substantially equal work as his white and Asian counterparts in the same or similar roles at Phillips 66, requiring the same skill, effort, responsibility, and under similar conditions.

64. Nevertheless, defendant paid plaintiff at a lower grade level - Grade 14 - which equated to less in base salary, bonus, and other forms of compensation while similarly situated non-black colleagues performed the same work and were paid at Grade 15 or higher.

65. Mr. Samuel was promised a raise upon accepting the Director position but never received the increase, resulting in a long-standing compensation disparity. There was no legitimate, non-discriminatory justification.

66. The pay disparity was not the result of merit, seniority, productivity or any other bona fide factor unrelated to race.

67. The company failed to correct this inequity despite repeated requests and internal complaints.

68. The company's unequal pay structure based on race violates both Title VII and 42 U.S.C.§ 1981, §2000e-2(a)(1).

69. Furthermore, Defendant's actions violate 42 U.S.C. § 1981, which guarantees all individuals the right to make and enforce contracts without regard to race. Compensation is a fundamental term of the employment contract; by paying Mr. Samuels less than his non-black colleagues for substantially similar work, Phillips 66 denied plaintiff the same contractual rights enjoyed by white and Asian employees, in violation of § 1981.

### COUNT 4: HOSTILE WORK ENVIRONMENT BASED ON RACE IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

70. Mr. Samuel incorporates the above-mentioned paragraphs as if fully set forth herein

71. Mr. Samuel further alleges that he was subjected to a hostile work environment based on his race in violation of 42 U.S.C. § 2000e-2.

72. Mr. Samuel was exposed to persistent and unwelcome conduct, including racially biased evaluation practices, unfair scrutiny, and retaliatory tactics meant to undermine his employment.

73. Specific actions contributing to the hostile environment included the targeted influence of Linda Fritsch, who, despite not being Mr. Samuel's direct manager, sought to damage his evaluation unfairly.

74. HR failed to intervene despite being informed of the situation and allowed the discriminatory conduct to continue.

75. The cumulative impact of this conduct was sufficiently severe and pervasive to alter the conditions of Mr. Samuel's employment and create an abusive working environment.

76. Phillips 66 is liable for maintaining and failing to correct this racially hostile work environment.

## V. DAMAGES

As a result of Phillips 66's unlawful conduct, including race discrimination, retaliation, disparate compensation, creation of a hostile work environment under Title VII of the Civil Rights Act of 1964, 42 U.S.C.§ 1981, and §2000e-2(a)(1), Mr. Samuel is entitled to recover the following damages:

- A. Backpay, including wages and salary, overtime, vacation pay and benefits;
- B. Front Pay;
- C. Punitive Damages;
- D. Mental anguish and emotional distress;
- E. Medical expenses past and future;
- F. Pre-Judgment and Post Judgment Interests;
- G. Reasonable attorney's fees;
- H. Court costs; and
- I. All other relief this court deems appropriate.

## VI. JURY DEMAND

Plaintiff requests a trial by jury.

Respectfully Submitted,
DANIEL, WILLIAMS, ASSOCIATES PLLC


By:        */s/Kathryn Willaims*
      Kathryn Williams
      k.williams@danielwilliamslaw.com
      Helen Daniel,
      h.daniel@danielwilliamslaw.com
      Kaila Washington
      k.washington@danielwilliamslaw.com
      2201 Hermann Drive
      Houston, Texas 77004
      Telephone: (713) 229-9997
      Facsimile:  (281) 501-6777
      **ATTORNEYS FOR MARK SAMUEL**